# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1959

_____

Gregory L. Iverson,                              *
                                                 *
        Plaintiff - Appellant,       *
                                                 *     Appeal from the United States
v.                                               *     District Court for the
                                                 *     District of Minnesota.
Johnson Gas Appliance Co., an Iowa               *
 corporation,                                   *
                                                 *
        Defendant - Appellee.        *
                                                 *

_____

Submitted: February 8, 1999
Filed: March 22, 1999

_____

Before McMILLIAN, LAY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

     Gregory L. Iverson was associated with Johnson Gas Appliance Company (Johnson Gas) for many years, as an employee and as a joint owner of a subsidiary retail business known as Summit Energy East Stores / Summit Home Center Stores (Summit stores). The parties entered into a number of written agreements and Iverson eventually sued Johnson Gas for fraud and breach of contract, as well as on several other causes of action. He served early discovery requests but Johnson Gas filed a motion to stay discovery and to dismiss, and Iverson obtained no discovery. After a

hearing the district court converted the motion to dismiss to one for summary judgment, ruled in favor of Johnson Gas, and denied the motion to stay discovery as moot. Iverson appeals from the judgment, arguing that he should have been allowed to conduct discovery and to amend his complaint and that genuine disputes over material issues of fact precluded summary judgment. We affirm in part and reverse in part and remand for further proceedings.

I.

Johnson Gas is an Iowa corporation which manufactures gas furnaces and high-efficiency gas fireplaces. Its principal place of business is Cedar Rapids, Iowa, and Barnes O'Donnell is the president and owner. This action grows out of written contracts and oral communications between O'Donnell and plaintiff Gregory Iverson, a Minnesota resident. Iverson was associated with Johnson Gas for many years, both as an employee responsible for national sales to wholesalers and distributors, and as a manager and joint owner of the Summit stores. The first formal employment contract between Johnson Gas and Iverson in the record is a 1995 agreement in which Johnson Gas employed Iverson as a national sales manager for its Mendota Hearth Division for two years.

In late 1987 Johnson Gas and Iverson agreed to go into a new business together. On December 9, 1987 they agreed in a written contract that they would jointly own and operate a subsidiary retail operation—the Summit stores. These Minnesota-based retail outlets would be managed by Iverson and would sell products manufactured by Johnson Gas and others. A loan from Johnson Gas provided the capital for the new business. Iverson did not receive an additional salary for his management role, but he was to receive commissions and a percentage of the profits. All of the financial accounting for the stores appears to have been handled by Johnson Gas.

2

The 1987 management agreement was replaced on January 1, 1988 with a new Summit Energy East Management Agreement. This agreement provided that revenue from the Summit stores would be expended in the following order of priority: operating expenses, interest on the debt to Johnson Gas, and repayment of the debt to Johnson Gas at the minimum rate of 25% per year starting in January 1989. Any additional profits would be distributed 40% to Iverson and 60% to Johnson Gas. The agreement also gave Iverson specific rights if the business were to be sold. In the event of a sale he would have the option of either purchasing the business at 60% of the amount of any bona fide offer or receiving 40% of the total sale price after all expenses and debts had been paid. Iverson admits receiving some payments under the agreement, but in most years Johnson Gas apparently told him that the stores were not profitable and he rarely received a distribution of annual profits.

In 1996 Johnson Gas decided to sell the Summit stores.[1] In preparation for a potential sale, O'Donnell called Iverson to his corporate headquarters on May 16, 1996 to discuss renegotiating the terms of their agreements, allegedly because Iverson's right of first refusal was hampering negotiations with a potential buyer. On May 16, Iverson and O'Donnell signed two new agreements—a new employment agreement for Iverson with Johnson Gas and an agreement in which Iverson relinquished his rights under the 1988 Summit management contract. These two agreements and the oral representations allegedly made on May 16 are central to the dispute between the parties.

By its terms, the May 1996 Summit agreement canceled the January 1, 1988 Summit Energy East Management Agreement. In the new agreement Iverson gave up his right either to purchase the Summit business for 60% of a bona fide offer or to receive 40% of the profits from its sale. In exchange for relinquishing these

---

[1]Even though the Summit stores were jointly owned, O'Donnell apparently made the decision to sell without consulting Iverson.

options, Iverson was to get $12,500 upon closing of the sale of the Summit stores. The agreement also included a provision giving Iverson 75% of some unspecified royalty payments and licensing and manufacturing rights to the Mendota brand and/or design of Gas Residential Hearth products manufactured in Australia/New Zealand. It further provided that Iverson could look at outside opportunities for the manufacture and/or sale of gas fireplaces, stoves, and inserts.

The May 1996 employment agreement provided that Johnson Gas would hire Iverson as a national sales manager for twelve months beginning July 1, 1996. It purported to terminate and supercede the 1995 employment agreement and specified Iverson's salary, commissions, and benefits. It also provided that Johnson Gas would pay Iverson 120 days salary and commissions if he was fired without cause before the end of the twelve month period unless he meanwhile secured alternative employment.

A few weeks after the May 16 agreements, Johnson Gas sold the Summit stores to a third party—Clopay. The record does not contain the exact date of the sale, the sale price, or the amount of profit Johnson Gas received from the sale. In response to a question at oral argument, counsel for Johnson Gas suggested that its profit was approximately $100,000 less costs and that it had also received promises from the buyer to serve as an exclusive dealer for its products in other markets. It is undisputed that after the sale Iverson received a check for $8500 and fireplace equipment worth $4000.

With the consummation of the sale, Johnson Gas no longer had a Minnesota retail business, and on July 8, 1996 it informed Iverson that it was terminating his employment as a national sales manager. It continued to pay his salary for four months and also gave him a check in the amount of $11,994.28 for four months commissions. Iverson kept this check, but did not cash it at that time.

4

Iverson contacted an attorney, and this action against Johnson Gas was started in state court. The original complaint and summons and a detailed request for document production were served on defendants in October 1997. The complaint alleged fraud, promissory estoppel, age discrimination, defamation, and breach of contract. It asserted that O'Donnell made misrepresentations to Iverson in order to get him to sign away his rights under the 1988 agreement. Iverson maintains O'Donnell promised him employment for as long as O'Donnell remained in business and represented that continued employment with Johnson Gas was more valuable than Iverson's right of first refusal to purchase the Summit stores. The complaint also alleged that Iverson relied on O'Donnell's statements and that this reliance was detrimental to him. Iverson soon amended his complaint, but Johnson Gas maintains the amended complaint was never properly filed and served. It nevertheless indicated in its motion to dismiss that it was moving on both the original and the first amended complaint, which added an additional breach of contract claim. In this sixth cause of action, Iverson alleged that defendants breached the 1988 Summit Energy East Management Agreement by not paying Iverson his share of profits due under the arrangement. Iverson also submitted a second demand for the production of documents, including Johnson Gas financial records for the Summit stores and Iverson's personnel files. He also submitted a request for admissions.

Johnson Gas removed the case to federal court on November 12, 1997, pursuant to 28 U.S.C. § 1441, and filed its motion to dismiss and for a stay of discovery. Accompanying this motion, Johnson Gas submitted affidavits by president Barnes O'Donnell and by counsel. Four relevant contracts were attached as exhibits to O'Donnell's affidavit, and Iverson's discovery requests were attached to counsel's affidavit. Iverson filed a response to the motion to dismiss which included his affidavit and that of counsel. Counsel's affidavit indicated that he believed that in order to respond appropriately to the motion to dismiss, Iverson needed to conduct discovery, specifically noting that he needed to review the documents sought in his discovery requests and to depose certain individuals. Johnson Gas submitted five

additional affidavits with its reply brief to support its assertions regarding the date of service of the amended complaint and the absence of any defamatory remarks; it submitted three more related affidavits in early January.

Shortly after the briefing on the motion to dismiss was completed, but prior to the hearing, Steve G. Heikens replaced Iverson's original attorney, and the hearing was delayed approximately one month. On February 6, 1998 Heikens filed a motion to remand to state court, challenging the timeliness of the removal and the amount in controversy.

The district court held a hearing on February 20, 1996 to consider the pending motions. At the hearing, Iverson voluntarily dismissed with prejudice his claims based on promissory estoppel, age discrimination, and breach of the 1996 employment agreement. The three claims remaining were those for fraud, defamation, and breach of the 1988 Summit agreement. During the arguments on the motion to dismiss, Johnson Gas described its motion as one to dismiss or in the alternative for summary judgment. Iverson's counsel noted that he was responding to it as a motion to dismiss, but requested leave to file a Fed. R. Civ. P. 56(f) affidavit if the court was considering treating it as a motion for summary judgment. He also requested leave to amend his complaint, and filed a Rule 56(f) affidavit which stated that Johnson Gas had not complied with Iverson's discovery requests and he was therefore unable to present what he needed to resist summary judgment.

That same afternoon the district court issued its order granting summary judgment to Johnson Gas. The court stated that it had referenced some matters outside of the pleadings and that there was no reason not to treat the motion as one for summary judgment. In a footnote it mentioned that Iverson had submitted a Rule 56(f) affidavit, but it did not discuss its content, stating only that the action was ripe for summary judgment. See Gregory Iverson v. Johnson Gas Appliance Co., Civ. No. 97-2506, slip op. at 11 n.2 (D. Minn. 1998). Summary judgment was granted on

Iverson's three remaining claims. The fraud claim was dismissed on the theory that no jury could conclude that Iverson had reasonably relied on the alleged promise of employment for life. The court was of the opinion that the 1988 Summit management agreement could not have been breached because it had been canceled by the 1996 agreement and that Iverson had not pled sufficient facts or produced evidence from which a reasonable jury could find defamation. The motion to remand was denied because it was untimely and because the jurisdictional amount in controversy was satisfied. The court also denied the motion to stay discovery as moot.

On his appeal Iverson challenges only the dismissal of his claims for fraud and breach of contract. He has voluntarily withdrawn his appeal of the dismissal of his defamation claim and has not contested the denial of his motion to remand, but he argues the grant of summary judgment was premature on his fraud and contract claims and seeks a remand for further proceedings on them.[2] Iverson maintains the court erred in converting the motion to dismiss to one for summary judgment without allowing any discovery, without notifying the parties, and without permitting him to amend his complaint. Iverson argues that he was prevented from obtaining discovery information critical to respond to a motion for summary judgment on the fraud and breach of contract claims. He says he required access to financial records for the Summit stores and to documents regarding the negotiations to sell the stores in order to flesh out his claims. He argues the May 1996 Summit agreement is void because

---

[2]He has also filed a motion to supplement the record on appeal. Iverson seeks to add to the record four pages that he says he found in his garage after his appeal was filed. They are described as part of a letter to Johnson Gas from its CPA relevant to the value of the Summit stores. Because of the way this case developed the district court did not consider the value of the stores, and we normally only consider evidence that was before the district court. Dakota Indus., v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993). But see Barry v. Barry, 78 F.3d 375, 379 (8th Cir. 1996). The motion to supplement the record on appeal is denied without prejudice to Iverson's right to move to introduce it in the district court.

it was fraudulently induced and so he is entitled to proceed to enforce his rights under the 1988 Summit Energy East Management Agreement. Johnson Gas styles Iverson's fraud claim as based exclusively on the assertion that he relied on O'Donnell's statement that he would have employment for life and argues it therefore fails to make a claim. It asserts that the fraudulent inducement claim fails as a matter of law, that Iverson has not adequately pled facts to support a claim based on fraudulent concealment, that his breach of contract claim was correctly dismissed, and that discovery would not alter the conclusion that his claims are legally and factually deficient.

II.

A.

Iverson's complaint alleged that Johnson Gas committed fraud by representing that "if Iverson would agree to cancel the Summit Energy East Management Agreement, Iverson would have a 'job for life' with Johnson Gas and that Iverson should do so because Iverson's right of first refusal was much less valuable than continued employment." It is not contested that the reference to the right of first refusal in the complaint is a reference to Iverson's right under the 1988 Summit stores agreement to purchase the stores at 60% of any bona fide offer. Closely related to this right is his alternate option to receive 40% of the purchase price minus costs. Iverson further alleged that he relied on these representations and suffered harm as a consequence.

The district court accepted the Johnson Gas characterization of the complaint as pleading fraud based solely on O'Donnell's representation that Iverson would have employment for life, but the complaint also alleged that O'Donnell had misrepresented the value of Iverson's rights under the 1988 Summit stores agreement and the court did not deal with that allegation. The court also declined to consider

8

Iverson's argument that Johnson Gas had fraudulently concealed information because it had not been adequately pled and because it believed that the fact Iverson knew negotiations for a sale were underway would defeat any such claim. <u>Gregory Iverson v. Johnson Gas Appliance Co.</u>, Civ. No. 97-2506, slip op. at 15 n.3 (D. Minn. 1998).

Under Minnesota law, fraud is properly pled if the complaint alleges the elements of intent, inducement, reliance, and damages. <u>See</u> <u>Atcas v. Credit Clearing Corp. of America</u>, 197 N.W.2d 448 (Minn. 1972); <u>McBrown v. Al-Chroma, Inc.</u> 386 N.W.2d 369, 374 (Minn. App. 1986). Fraud must be pled with particularity, Minn. R. Civ. P. 9.02; <u>Boubelik v. Liberty State Bank</u>, 553 N.W.2d 393 (Minn. 1996), and the material facts constituting fraud must be alleged. <u>Parrish v. Peoples</u> 9 N.W. 2d 225 (Minn. 1943). State law also recognizes that "[f]raud is a protean legal concept, assuming may shapes and forms." <u>Jacobs v. Farmland Mutual</u>, 377 N.W.2d 441, 444 n.1 (Minn. 1985). Fraud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment,[3] and fraudulent inducement. <u>See, e.g.,</u> <u>In re TMJ Litigation</u>, 113 F.3d 1484, 1497 (8th Cir. 1997). In some circumstances, fraudulent misrepresentation and fraudulent concealment may be closely related. <u>See id.</u> A fraudulent misrepresentation claim may rely on either an affirmative statement or the failure to disclose certain facts rendering those disclosed misleading. <u>See</u> <u>M.H. v. Cantos Family</u> Services, 488 N.W.2d 282, 289 (Minn. 1992).

Iverson's complaint did not specifically allege that Johnson Gas had concealed financial information. He thus did not state an independent fraud claim based on a theory of fraudulent concealment. Nonetheless, Iverson has adequately pled fraud based on the theory of fraudulent misrepresentation of the value of his right of first

---

[3]Claims of fraud based on fraudulent concealment are distinct from the use of fraudulent concealment to toll the statute of limitations. <u>See</u> <u>Cherne Contracting Corp. v. Wausau Insurance Co.</u>, 572 N.W.2d 339, 345 & n.2 (Minn. App. 1998); <u>see also</u> <u>Hydra-Mac, Inc. v. Onan Corp.</u>, 450 N.W.2d 913, 918 (Minn.1990).

refusal, and any concealment of information by Johnson Gas is relevant to that claim. It appears not to be disputed that Johnson Gas kept the financial records to the Summit stores while Iverson was generally familiar with the day to day business. To the extent that information was deliberately withheld from Iverson it would undercut the reliability of statements made during the 1996 negotiations. Since the district court did not consider all aspects of fraud pled by Iverson when it granted summary judgment, the judgment must be vacated and the fraud claim remanded for further proceedings. It will be within the discretion of the district court whether or not to allow Iverson to amend his complaint to plead his fraud claim with greater specificity.

B.

The cornerstone of Iverson's appeal is that the district court prematurely granted summary judgment on both his fraud and breach of contract claims. This issue is one of federal law even though the substantive issues are questions of state law. See In re TMJ Litigation, 113 F.3d 1484, 1488 (8th Cir. 1997). We review an order granting summary judgment de novo, applying the same standard as the district court. Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1021 (8th Cir. 1998). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plaintiff must present affirmative evidence to defeat a motion for summary judgment "even where the evidence is likely to be in the possession of the defendant as long as the plaintiff has had a full opportunity to conduct discovery." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

As a general rule, summary judgment is proper "only after the nonmovant has had adequate time for discovery." In re TMJ Litigation, 113 F.3d at 1490; see also Palmer v. Tracor, Inc., 856 F.2d 1131 (8th Cir. 1988). Nonmovants may request a

10

continuance under Rule 56(f) until adequate discovery has been completed if they otherwise cannot present facts sufficient to justify their opposition. This option exists to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). "If a party opposing a summary judgment motion does not seek shelter under Rule 56(f) or otherwise ask for a continuance, a District Court generally does not abuse its discretion in granting summary judgment . . . ." In re TMJ Litigation, 113 F.3d at 1490. Discovery is not necessary in every situation; for example, when a complaint is facially time-barred, Humphreys v. Roche Biomedical Labs., Inc. 990 F.2d 1078, 1081 (8th Cir. 1993), or when the nonmovant merely seeks to fish for a constitutional violation, Duffy v. Wolfe, 123 F.3d 1026 (8th Cir. 1997). If the failure to allow discovery deprives the nonmovant of a fair chance to respond to the motion, however, summary judgment is not proper and will be reversed. See Palmer v. Tracor Inc., 856 F.2d 1131 (8th Cir. 1988).

In granting summary judgment, the district court did not discuss the points raised by Iverson as to why it would be premature and why discovery was needed. Iverson had requested discovery of information regarding the financial status of the Summit stores, the negotiations for their sale to Clopay, the reasons for excluding Iverson from the sale discussions, as well as other related matters. Iverson's first attorney filed an affidavit highlighting the necessity for discovery, and his second attorney similarly filed a Rule 56(f) affidavit. Perhaps his discovery requests were overly broad and onerous, but the district court never discussed whether that was so or whether any part of the requested discovery had merit.

It appears from the record that some discovery was necessary for Iverson to present his fraud claim. He was a salesman and not the keeper of the financial records. The truth of the statements regarding the profitability of the Summit stores and the value of Iverson's rights under the 1988 contract could not be evaluated without access to relevant financial records. Discovery was also relevant to the

11

reasonableness of Iverson's reliance on O'Donnell's statements.  See Nicollett Restoration, Inc. v. City of St. Paul, 533 N.W.2d 845, 848 (Minn. 1995).

The district court also granted summary judgment on Iverson's claim that Johnson Gas breached a provision in the 1988 Summit management agreement which provided Iverson was to receive 40% of the revenue generated by the Summit stores after payment specified expenses.  The district court believed there was no basis for a claim that the 1988 agreement had been breached because that contract had been terminated by the language of the 1996 agreement.  It also said that Iverson had not submitted evidence to support any claim that predated the May 1996 agreement. Gregory Iverson v. Johnson Gas Appliance Co., Civ. No. 97-2506, slip op. at 17-18 (D. Minn. 1998).  The stores were operational from 1988 until they were sold in mid 1996 so virtually all of Iverson's claim for revenues predated the 1996 agreement. The court did not consider or discuss, however, whether Johnson had had adequate opportunity to gather information to support this claim or explain why it found the claim ripe for summary judgment.  Iverson had no access to financial information regarding the Summit stores despite repeated discovery requests, and he testified by affidavit that, on some occasions, Johnson Gas refused to pay him his portion of the revenue from the Summit stores.

When relevant information is entirely within one party's control, discovery requests must be enforced to ensure that the other party has access to adequate information to respond to a motion for summary judgment.  See Villante v. Dep't of Corrections, 786 F.2d 516, 521 (2nd Cir. 1986); see also Nickens v. White, 622 F.2d 967, 970 (8th Cir. 1980).  Iverson's specific discovery requests may well have been subject to attack, but this did not eliminate the need for the court to address the discovery demands and whether or not they were necessary and reasonable and their proper scope.  Since the district court did not address whether Iverson had an adequate opportunity to pursue his fraud and contract claims, and because it appears

he did not, these claims were not yet ripe for summary judgment.  See <u>Palmer</u>, 856 F.2d at 1134.

C.

For the reasons discussed above, summary judgment was premature on the claims for fraud and breach of the 1988 Summit Energy East Management Agreement. The judgment of the district court is vacated as to those claims, but affirmed as to the dismissal of Iverson's other claims and as to the denial of the motion to remand.  The fraud and 1988 contract claims are remanded for the district court to fashion a reasonable period and scope for discovery before further dispositive motions or other final disposition.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.