# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3791

_____

Michael Hess, personal representative   *
of the Estate of George E. Hess,          *
                                            *

      Plaintiff/Appellant,          *

                                            *   Appeal from the United States

George E. Hess,                  *   District Court for the

                                            *   Western District of Missouri.

      Plaintiff,                *

                                            *

      v.                       *

                                            *

Citibank, (South Dakota), N.A.,     *

                                            *

      Defendant/Appellee.       *

_____

Submitted: June 14, 2006
Filed: August 14, 2006

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Michael Hess, personal representative of his father's estate, appeals the district court's[1] grant of summary judgment dismissing the estate's claims under state law and the Truth in Lending Act, 15 U.S.C. §§ 1601-1667f ("TILA"). We affirm.

I.

Michael Hess's father, George Hess, was the holder of a Citibank Visa credit card when he died on August 29, 1998. At the time of his death, his account balance was $889.58. On November 6, 1998, the probate court of Jackson County, Missouri, appointed Michael Hess the personal representative of his father's estate. On February 24, 1999, Citibank filed a claim for $889.58 in the probate estate and attached a copy of George Hess's credit card statement dated September 10, 1998, reflecting this account balance.

Michael Hess, on behalf of the estate, sent Citibank a check for $974.96 in December 2000, apparently relying on the last statement received by his father prior to his death, which listed this higher amount as the balance due. This older statement, dated August 11, 1998, did not reflect either a payment of $100 that posted on August 27 or finance charges added to the account by Citibank, which resulted in the balance of $889.58 on the September 1998 statement. Citibank's internal statements from November 1998 through November 2000, which were never mailed to George or Michael Hess, list an account balance of $968.22. The estate's payment posted on December 11, 2000, and Citibank's internal statements dated December 11, 2000, and January 10, 2001, both list a credit of $6.74.

On June 9, 2004, Michael Hess filed suit in the district court, claiming Citibank owed his father's estate a refund of $85.38, which represented the difference between

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

-2-

Citibank's claim in probate and the estate's payment, or, at a minimum, $6.74, the credit balance reflected on Citibank's internal statements after the payment. He alleged that Citibank had failed to refund the credit and had instead "swept" the credit into its own general account, then had "covered up" the allegedly unlawful transaction by failing to provide periodic statements, in violation of the TILA and Regulation Z, 12 C.F.R. §§ 226.1-226.36. He also alleged violations of state law, including conversion, breach of contract, breach of the covenant of good faith, fraud, money had and received, and unjust enrichment. Hess purported to sue on behalf of a nationwide class of consumers whose accounts allegedly had been swept by Citibank after 60 days of inactivity.

In response, Citibank moved for summary judgment, arguing that Hess could not prove one essential element necessary to every count in the complaint – *i.e.*, that Citibank had misappropriated an account balance properly due to George Hess's estate – and thus could not seek relief on behalf of himself or any member of the purported class. Citibank claimed that it was entitled to interest that had accrued during the two years between the date in February 1999, when it filed its claim in the probate court, and Michael's payment in December 2000. Citibank contended that, whether the amount of interest was calculated according to the terms of the cardmember agreement attached by Hess to his complaint or under Missouri's statutory interest rate, the balance on the account as of December 2000 exceeded the $974.96 payment, so Citibank did not owe any money to George Hess's estate.

The district court stayed discovery pending resolution of the motion for summary judgment, and then granted Citibank's motion. The court calculated the amount of interest that would have accrued on the account through December 2000 employing three different potential methodologies. Using the annual percentage rate of 18.90% listed on the statement dated September 10, 1998, the court calculated the total interest that would have accrued under both variable and fixed rates, and then, as a third alternative, calculated the total interest accrued using the statutory rate of

9% per annum, as provided by Missouri Revised Statutes § 408.020. The court reasoned that under any method of computing interest, the balance on George Hess's account in December 2000 would have been greater than $974.96. The court observed that the cardmember agreement submitted by Hess states that finances charges continue to accrue until payment-in-full is credited to the account, and concluded that once Citibank was notified of George Hess's death, the TILA and Regulation Z do not require Citibank to continue to send monthly statements to his estate. The court concluded that Citibank had demonstrated that it was entitled to interest, and that the total account balance was more than the payment, so "there was no overpayment and no credit balance owing to George Hess' account." The court therefore held that Hess could not "prove an essential element of each of his seven claims." (App. at 439-440).

## II.

On appeal, Hess argues that Citibank violated the TILA because it did not send a billing statement to the estate disclosing "how and when it supposedly charged the interest eliminating the positive credit balance" in George Hess's account. (Appellant's Br. at 33 n.9). Under section 127(b) of the TILA:

> [t]he creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable: . . . (4) [t]he amount of any finance charge added to the account during the period.

15 U.S.C. § 1637(b). Hess argues that upon George Hess's death, his estate became the "obligor" entitled to periodic statements, because it "was obligated to pay the debt and was treated as an obligor by Citibank when it submitted a claim against the estate in the Hess probate." (Appellant's Br. at 32). Hess also claims that Citibank's failure

to send account statements to the estate violated the disclosure requirements of Regulation Z. Citibank responds that it was not required to send statements to George Hess's estate for three independent reasons, one of which is that the Hess estate was not an "obligor" within the meaning of 15 U.S.C. § 1637(b).

Congress has delegated to the Board of Governors of the Federal Reserve System the authority to prescribe regulations that may contain "such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of [the TILA], to prevent circumvention or evasion thereof, or to facilitate compliance therewith." 15 U.S.C. § 1604(a). Congress has specifically designated the Board as the primary source for interpretation and application of the TILA, *see Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 238 (2004), empowering it to formulate interstitial policy and to create rules for administering the statute.

In reviewing the agency's construction of the statute, if Congress has "directly spoken to the precise question at issue," then we must "give effect to the unambiguously expressed intent." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see also First Nat'l Bank of Council Bluffs v. Office of the Comptroller of the Currency*, 956 F.2d 1456, 1462-63 (8th Cir. 1992) (finding the statutory phrase "immediate preceding examination" in section 108(e)(3)(i) of the TILA to be unambiguous). Otherwise, where Congress has "explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Chevron, U.S.A., Inc.*, 467 U.S. at 843-44. Absent a clear expression of congressional intent, legislative regulations are given controlling weight unless they are "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844. Deference to the views of the Board is "especially appropriate" in the process of interpreting the TILA, given the agency's "pivotal role in setting the statutory machinery in motion," broad

administrative lawmaking power delegated by Congress, and unique position to navigate the complexities of the statute striking the appropriate balance between "competing considerations of complete disclosure and the need to avoid informational overload." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565-569 (1980) (internal quotations omitted).

The TILA does not define the term "obligor" used in section 127(b). As we shall explain below, there is a substantial argument that the text and structure of the TILA unambiguously excludes an estate from the scope of "obligor," but at best for Hess, the term is ambiguous. The Board enacted Regulation Z to implement the TILA, *see* 12 C.F.R. § 226.1(a), and it is entitled to deference in applying ambiguous terms. Sections 226.5-226.16 of Regulation Z include the regulatory provisions that govern open-end credit plans, *see Schnall v. Marine Midland Bank*, 225 F.3d 263, 266-69 (2d Cir. 2000), and it is evident that the Board intended 12 C.F.R. § 226.7 to define the scope of a creditor's obligations to disclose periodic statements for open-end credit plans. Creditors need "sure guidance through the highly technical Truth in Lending Act," and Congress, in delegating regulatory authority to the Board, has chosen to resolve interpretive issues under the TILA by "uniform administrative decision, rather than piecemeal through litigation." *Ford Motor Credit Co.*, 444 U.S. at 567-68 (internal quotation omitted). We therefore look to whether the pertinent regulation permissibly defines the disclosure obligations of creditors in this area, and we "refrain from substituting [our] own interstitial lawmaking for that of the Federal Reserve, so long as the latter's lawmaking is not irrational." *Id.* at 568; *see also Household Credit Servs., Inc.*, 541 U.S. at 244.

According to the governing regulation, "[t]he creditor shall furnish *the consumer* with a periodic statement that discloses . . . [t]he amount of any finance charge debited or added to the account during the billing cycle, using the term 'finance charge.'" 12 C.F.R. § 226.7(f) (emphasis added). The term "consumer" is defined in the regulation as "a cardholder or a *natural person* to whom consumer credit is offered

-6-

or extended," 12 C.F.R. § 226.2(a)(11) (emphasis added), while a "cardholder" is defined as "a *natural person* to whom a credit card is issued for consumer credit purposes, or a *natural person* who has agreed with the card issuer to pay consumer credit obligations arising from the issuance of a credit card to another natural person." 12 C.F.R. § 226.2(a)(8) (emphasis added). Thus, under the plain language of Regulation Z, a creditor is required to furnish periodic statements only to natural persons. This duty does not extend to organizations, such as an estate. *Cf.* 12 C.F.R. § 226.2(a)(22) (defining "person" as "a natural person or an organization, including a corporation, partnership, proprietorship, association, cooperative, estate, trust, or government unit"); *id.* § 226.2(a)(7) (defining "card issuer" as "a *person* that issues a credit card or that person's agent with respect to the card") (emphasis added).

We believe that the regulation's requirement that only natural persons be furnished with periodic statements is a permissible reading of the TILA, and, indeed, the better construction of the text, structure, and design of the statute as a whole. *See Household Credit Servs., Inc.*, 541 U.S. at 239. The TILA, like Regulation Z, also sets up a clear distinction between "persons," which may include an estate, and "natural persons." *See* 15 U.S.C. § 1602(c), (d). Section 127, which requires a creditor to send the "obligor" a statement for each billing cycle in which a finance charge is imposed, is entitled "open end consumer credit plans," and sets forth standards, including the periodic statement requirement, specifically applying to these accounts. 15 U.S.C. § 1637. In a definition section, the statute explains that "[t]he adjective 'consumer,' used with reference to a credit transaction, characterizes the transaction as one in which the party to whom the credit is offered or extended is *a natural person*, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h) (emphasis added). For an extension of credit to be considered an extension of "consumer" credit, the party to whom the credit is extended must be a natural person. *Am. Express Co. v. Koerner*, 452 U.S. 233, 241 (1981). Although the statute does not specifically define the term "obligor," the use of the term in a section

regulating open-end consumer credit plans implies that the party to whom credit is being extended, *i.e.*, the obligor, is a consumer, and thus a natural person. At a minimum, the Board's decision to adopt a regulation consistent with that reading of the statute is not irrational. Therefore, Citibank did not violate the TILA by failing to send periodic statements to the Hess estate.

III.

The remaining claims in the lawsuit depend upon whether, under Missouri law, George Hess's account had a credit balance at the time Citibank allegedly swept the funds into its own accounts. Hess argues that Citibank did not include interest on its claim in probate court. Missouri Revised Statutes § 473.360(1) provides that all claims against an estate not submitted in the probate proceeding are extinguished, so Hess contends that Citibank cannot now claim entitlement to interest on the probate claim or recover on any claims not made in the probate court. Because Citibank only demanded $889.58 in probate, Hess asserts, his payment of $974.96 resulted in a credit balance in the account. Citibank counters that it was entitled to both contractual and statutory prejudgment interest on its claim filed in probate court. It argues that the amount of this interest, plus the original debt, was greater than the amount paid by Hess, so there was never a credit balance in the account to be "swept."

Under Missouri law, "the strict rules of pleadings in circuit court petitions do not apply to probate proceedings," and it is sufficient if the pleadings "give reasonable notice of the nature and extent of the claim." *Ryan v. Spiegelhalter*, 64 S.W.2d 302, 308 (Mo. banc 2002) (internal quotations and citations omitted); *see also Jensen v. Estate of McCall*, 426 S.W.2d 52, 55 (Mo. 1968); *Matter of Estate of Woodrum*, 859 S.W.2d 259, 261 (Mo. Ct. App. 1993). Claims filed in probate court "must be construed liberally and favorably to plaintiffs, giving them the benefit of all inferences fairly deducible from the facts stated therein." *Woodrum*, 859 S.W.2d at 261 (internal quotation and citation omitted); *see also Jensen*, 426 S.W.2d at 57.

Even in cases outside of probate, an express allegation seeking prejudgment interest is not a prerequisite to the award of such interest. *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 111 (Mo. Ct. App. 2004). A probate claim that states a specific dollar amount, and nothing more, apparently is insufficient to justify an award of interest, *Estate of Strauss v. Schaeffer*, 781 S.W.2d 274, 275 (Mo. Ct. App. 1989), but under the liberal standard of probate pleadings, "reasonable notice" does not require a specific mention of interest in the claim. For example, a general open-ended prayer for relief is sufficient to allow recovery of prejudgment interest, *see Call v. Heard*, 925 S.W.2d 840, 853-54 (Mo. banc 1996), and notice of a claim for interest may be provided by documents attached to a claim and reasonable inferences that can be drawn from those documents. *See Jensen*, 426 S.W.2d at 57; *see also Ryan*, 64 S.W.3d at 308-09 (relying on contracts incorporated in pleading by reference to discern claim for interest in real property).

In this case, Citibank's claim against George Hess's probate estate states that "there is due from the above-captioned estate the sum of $889.58 on account of [a] Revolving Credit Card Charge for Acct. #(s): 4128003159868812. Please see attached billing statement." (App. at 74). The attached billing statement lists a "new balance" of $889.58, sets forth a minimum amount due of $20.00, and provides a payment due date of October 5, 1998. The statement also shows that the "new balance" includes the accrual of $14.62 in finance charges over the thirty days prior to the statement date, lists an annual percentage rate of 18.90%, and includes a "balance subject to this charge" of $928.29. (*Id.*). The ongoing accrual of finance charges and the notation that the monthly outstanding balance on the account is subject to finance charges at a rate of 18.90% conveys the information that the balance on George Hess's account is subject to interest charges. The incorporation of the billing statement into Citibank's probate claim, read liberally and in light of the minimal pleading requirements of Missouri probate law, leads to the reasonable inference that Citibank was requesting interest as listed on the statement, and provides reasonable notice that Citibank's probate claim included interest.

We thus conclude that Citibank adequately pleaded a claim for interest, and we turn to Citibank's contention that it was entitled to prejudgment interest based on either a contract with Hess or the Missouri statute on prejudgment interest. Hess argues that Citibank was not entitled to contractual interest, because although several cardmember agreements are in the record, and each of them plainly contemplates an interest rate well above the rate necessary to defeat Hess's claim, Citibank did not produce the specific agreement governing the parties at the time of George Hess's death in 1998. Assuming without deciding that Citibank failed to prove its entitlement to contractual interest, its pleading of a claim for contractual interest authorizes an award of interest under the Missouri statute. The statute provides that "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made." Mo. Rev. Stat. § 408.020. This provision applies whether or not a party specifies the statutory authority under which it seeks prejudgment interest, *Springfield Land & Dev. Co. v. Bass*, 48 S.W.3d 620, 633 & n.9 (Mo. Ct. App. 2001), and if a demand for payment is not made prior to the filing of a lawsuit, the filing itself constitutes a demand. *Watters*, 136 S.W.3d at 111. As a general rule, "an award of prejudgment interest in a case where § 408.020 is applicable is not a matter of court discretion; it is compelled." *Bass*, 48 S.W.3d at 633 (internal quotation omitted).

Citibank was entitled to statutory interest from February 24, 1999, the date that it filed its claim in probate demanding payment, through December 10, 2000, the date on which the estate paid $974.96 to Citibank. This interest, at the statutory rate of 9% per annum, totals $143.89. With an initial balance of $889.58, the estate owed Citibank at least $1033.47 at the time of the estate's payment of $974.96. Accordingly, there was no credit balance at the time of the alleged sweeping, and Hess cannot prove an essential element of each of his claims.

IV.

Hess also argues that the district court erred in staying discovery pending resolution of the motion for summary judgment. We review a district court's determination that a claim is ripe for summary judgment for abuse of discretion, applying federal law. *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig. v. Dow Chem. Co.*, 113 F.3d 1484, 1488-89 (8th Cir. 1997). Discovery need not be completed before a court may grant summary judgment, *id.* at 1489-90, and it is not necessary in every situation. *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999). If the failure to allow discovery "deprives the nonmovant of a fair chance to respond to the motion, however, summary judgment is not proper and will be reversed." *Id.*

The parties do not dispute the basic underlying facts upon which the district court granted summary judgment. While Hess listed a number of allegedly disputed facts in his appellate brief, these facts either do not bear on the issues before the court, *see, e.g.*, *Newport v. Ford Motor Co.*, 91 F.3d 1164, 1167 (8th Cir. 1996), or are legal questions, suitable for resolution without discovery. *See DeGrassi v. City of Glendora*, 207 F.3d 636, 643 (9th Cir. 2000). Because the evidence that Hess sought to discover would not rebut Citibank's evidence that there was no credit balance at the time of the alleged sweeping, the district court did not abuse its discretion by staying discovery. *Newport*, 91 F.3d at 1167; *Dravo Corp. v. Zuber*, 13 F.3d 1222, 1228 (8th Cir. 1994).

\*     \*     \*

The judgment of the district court is affirmed.

_____