# United States Court of Appeals for the Federal Circuit

2007-1312


METROPOLITAN LIFE INSURANCE COMPANY,

Plaintiff-Appellee,

v.


BANCORP SERVICES, L.L.C.
and BENEFIT FINANCE PARTNERS, L.L.C.,

Defendants-Appellants.

Joseph R. Guerra, Sidley Austin LLP, of Washington, DC, argued for plaintiff-appellee. With him on the brief was Robert A. Parker.

Charles K. Verhoeven, Quinn Emanuel Urquhart Oliver & Hedges, LLP, of San Francisco, California, argued for defendants-appellants. With him on the brief were David A. Perlson; and Patrick M. Shields and William A. Morehead, of Los Angeles, California.

Appealed from: United States District Court for the Eastern District of Missouri

Chief Judge Carol E. Jackson

# United States Court of Appeals for the Federal Circuit

2007-1312

METROPOLITAN LIFE INSURANCE COMPANY,

Plaintiff-Appellee,

v.

BANCORP SERVICES, L.L.C.
and BENEFIT FINANCE PARTNERS, L.L.C.,

Defendants-Appellants.

Appeal from the United States District Court for the Eastern District of Missouri in case no. 4:00-CV-1927, Chief Judge Carol E. Jackson.

_____

DECIDED: June 2, 2008

_____

Before MAYER, DYK, and MOORE, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

Appellants Bancorp Services, L.L.C., and Benefit Finance Partners, L.L.C., (collectively "Bancorp") appeal the order of the District Court for the Eastern District of Missouri granting summary judgment that appellee Metropolitan Life Insurance Company ("MetLife") did not infringe U.S. Patent No. 5,926,792 ("the '792 patent").

We conclude that the district court, in granting summary judgment of noninfringement, properly construed the phrase "calculating surrender value protected investment credits" ("SVPICs") as meaning that "the accused system or method must calculate the difference between the 'book value' and the 'market value,'" of a stable value insurance policy. <u>Metro. Life Ins. Co. v. Bancorp Servs. L.L.C.</u>, No. 4:00-CV-1927, slip op. at 5 (E.D. Mo. Mar. 13, 2006) ("<u>MetLife II</u>"). However, we also conclude

that the district court erred in denying additional discovery and that, even on the present record, Bancorp raised a genuine issue of material fact as to the issue of infringement. Accordingly, we vacate the judgment of noninfringement and remand for proceedings consistent with this opinion.

## BACKGROUND

The '792 patent concerns a "[m]ethod and system to track, reconcile and administer the values of life insurance policies." '792 patent at [57]. The invention concerns a method and system to administer a specific type of life insurance policy that is often purchased by businesses on the lives of their employees, known as Business Owned Life Insurance ("BOLI") policies. The business pays an additional premium beyond that required to fund the death benefit, and specifies the types of assets in which the additional value is invested. Businesses often use these policies as a tax-advantaged means to fund post-retirement benefits for their employees.[1]

One problem with such policies arises from the fact that accounting rules require that the policy owner report the cash surrender value of the policy, which varies substantially with the volatile market value of the underlying securities. Businesses would prefer to report a more predictable value in their financial statements. This problem may be avoided by purchasing a stable value protected ("SVP") policy that includes a separate insurance policy, sometimes called wrap insurance or a wrap product, that guarantees the surrender value of the SVP portion of the investment based on a targeted rate of return, which is reset over time. Over a long period of time,

---

[1] A more extensive discussion of the context of the patent is provided both in the '792 patent itself, and in this court's opinion in <u>Bancorp Services LLC v. Hartford Life Insurance Co.</u>, 359 F.3d 1367, 1369 (Fed. Cir. 2004).

the guaranteed value is expected to conform to the market price of the underlying investment.  This SVP feature allows the owner of an SVP BOLI insurance policy to report a smoothed, guaranteed value ("book value"), rather than the volatile market value of the SVP assets, on its financial statements.  Insurance companies that write and administer SVP BOLI insurance policies need to calculate, among other things, the difference between the market value and book value of the SVP investment.  As this court previously explained, the '792 "patent provides a computerized means for tracking the book value and market value of the policies and calculating the credits representing the amount the stable value protected writer must guarantee and pay should the policy be paid out prematurely."  Bancorp Servs. LLC v. Hartford Life Ins. Co., 359 F.3d 1367, 1369 (Fed. Cir. 2004) ("Hartford").

Bancorp, the owner of the '792 patent, accused MetLife of infringement.  In February 2000, MetLife filed an action in the United States District Court for the Southern District of New York seeking, among other relief, a declaratory judgment of noninfringement and invalidity of the '792 patent.  MetLife's action was transferred to the Eastern District of Missouri in December 2000, where three actions relating to the '792 patent were already pending.  On February 13, 2002, the district court ruled in one of the other pending actions, Bancorp Services, LLC v. Hartford Life Insurance Co., No. 4:00-CV-70, that the '792 patent was invalid because the phrase "surrender value protected investment credits," (a phrase appearing in each independent claim of the '792 patent) was indefinite.  The accused infringer in that action (Hartford Life Insurance Company), appealed to this court.  The district court, by order dated March 19, 2003, stayed MetLife's action pending the outcome of that appeal.  This court reversed the

district court's indefiniteness judgment on March 1, 2004. Hartford, 359 F.3d at 1376. Bancorp then filed an infringement action against MetLife, and the district court later consolidated this new action with the stayed declaratory judgment action previously filed by MetLife.

The stay was lifted in February of 2005. Discovery had taken place in the MetLife declaratory judgment action, but no discovery schedule had been set in the Bancorp infringement action, and no significant discovery, if any at all, had occurred in that action. Shortly after the stay was lifted, in April 2005, MetLife moved for summary judgment of noninfringement. MetLife's motion was supported by affidavits of Sebastian Janssen and Shelley Lang stating that MetLife did not calculate SVPICs (that is, "surrender value protected investment credits"). By letter dated June 7, 2005, Bancorp requested depositions, including depositions of Janssen and Lang, and document discovery from MetLife concerning the accused SVP policy administration components of MetLife's Vantage system, which were not implemented until at least sometime in 2002. MetLife agreed to start producing some of the requested documents, but denied Bancorp's requested depositions.

In June 2005, Bancorp filed a motion pursuant to Fed. R. Civ. P. 56(f), seeking additional discovery to respond to MetLife's summary judgment motion, accompanied by a declaration explaining why it could not present essential facts in opposition to the motion for summary judgment until the completion of the requested discovery. In particular, Bancorp sought a stay pending depositions of the declarants offered in support of MetLife's motion for summary judgment, Janssen and Lang. Bancorp at approximately the same time filed an opposition to the summary judgment motion.

On January 5, 2006, the district court denied Bancorp's Rule 56(f) motion, reasoning that Bancorp was not entitled to any depositions or additional document discovery because it had not shown that MetLife's declarants would contradict their declarations if deposed and had not shown that additional document discovery would lead to relevant evidence of infringement in light of MetLife's declarations.

> Bancorp seeks to depose several of MetLife's current and former employees who have knowledge of MetLife's SV COLI/BOLI administration system. Again, Bancorp offers little in the way of support, declaring only that it is likely such witnesses would testify that, contrary to the declarations by Lang and Janssen, MetLife's system does indeed calculate surrender value protected investment credits. <u>To the extent that Bancorp's request to take depositions depends upon its contention that Lang and Janssen committed perjury, the Court has already rejected that claim.</u>

<u>Metro. Life Ins. Co. v. Bancorp Servs. L.L.C.</u>, No. 4:00-CV-1927, slip op. at 10-11 (E.D. Mo. Jan. 5, 2006) ("<u>MetLife I</u>") (emphasis added). However, the district court granted Bancorp an opportunity to supplement its opposition to the summary judgment motion based on the source code for the Vantage software, which was ultimately provided to Bancorp only days before its opposition was due (and which was critical to understanding both the functioning of the Vantage system and many of the documents regarding that system that MetLife had produced). Bancorp filed an affidavit of its expert, David Klausner, indicating his conclusion that the Vantage system either directly calculated SVPICs or exported data to spreadsheets that made these calculations. MetLife subsequently filed responsive declarations by Lang and Janssen contesting Klausner's analysis.

On March 13, 2006, the district court denied MetLife's motion for summary judgment. The court construed the disputed claim term, "surrender value protected

investment credits," based on this court's opinion in Hartford to require that "the accused system or method . . . calculate the difference between the 'book value' [of the protected investment] and the 'market value,' (also known as the 'wrap asset' or 'wrap security')." MetLife II, slip op. at 5. Under this claim construction, the court reasoned that Klausner's affidavit raised a material question of fact as to infringement, based on at least one module of the Vantage source code that "calculates the ratio of market value over book value, which Mr. Klausner asserts may then be used to calculate the difference between book value and market value." Id. at 7. Accordingly, the court denied MetLife's motion for summary judgment of noninfringement.

MetLife moved for reconsideration, and, by order dated February 6, 2007, the district court granted reconsideration and granted summary judgment of noninfringement in favor of MetLife. The court concluded that its prior denial of MetLife's motion for summary judgment "rested upon a manifest error of fact." Metropolitan Life Ins. Co. v. Bancorp Servs. LLC, No. 4:00-CV-1927, slip op. at 1 (E.D. Mo. Feb. 6, 2007) ("MetLife III"). The court explained that it had previously misunderstood Klausner's declaration as stating that the module of the Vantage system that calculates the ratio between the market and book value of the SVP funds was the equivalent of determining the difference between these figures. The court concluded that Klausner's declaration did not in fact support this conclusion but instead only indicated that there is a mathematical method to convert the ratio into a difference, without providing adequate evidence that the Vantage system actually made this conversion.

The court also rejected Klausner's statement that certain Vantage modules exported data to spreadsheets that made the SVPIC calculation. To do so, the district court appears to have implicitly relied both on the existence of a claim limitation in the '792 patent requiring that the other limitations be satisfied in the course of managing or administering a life insurance policy and on a declaration offered by MetLife witness Sebastian Janssen. Janssen's declaration stated that while Klausner correctly noted that MetLife spreadsheets calculated the difference between market and book value, these spreadsheets had never been used with actual data for administration of an SVP life insurance policy. The district court accepted Janssen's statements as true and thus concluded that Klausner's declaration did not show "that MetLife calculates the difference between book value and market value in the administration of its Stable Value COLI/BOLI accounts." MetLife III, slip op. at 6.

The district court entered a final judgment on April 2, 2007, after MetLife's claims that the '792 patent is invalid or unenforceable were dismissed without prejudice. Bancorp timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I

This case initially involves the district court's claim construction. We review both the district court's grant of summary judgment and its claim construction de novo. AquaTex Indus., Inc. v. Techniche Solutions, 479 F.3d 1320, 1328 (Fed. Cir. 2007); Cybor Corp. v. FAS Tech., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).

Bancorp first argues that the district court's summary judgment of noninfringement rested on an improper construction of the SVPIC calculation claim

limitation, which requires "calculating surrender value protected investment credits for the life insurance policy." This limitation is present in every claim of the '792 patent. The district court held that the claim term SVPIC in this limitation means the difference between the market value and the book value of the surrender value protected investment. Bancorp urges that the claim term SVPIC is properly construed as "the increase in value—i.e. the 'credit'—of the stable value investment necessary to achieve the targeted return for the fund." Initial Br. of Defendant-Appellant, at 40.

Contrary to Bancorp's arguments, we conclude that this issue was resolved in Hartford, and that Hartford requires the construction adopted by the district court. In Hartford, this court reversed the district court's conclusion that the term SVPIC was indefinite because "the meaning of the term 'surrender value protected investment credits' is reasonably discernible . . . ." Hartford, 359 F.3d at 1372. This court went on to explain the meaning of the term. "Viewing these components of the claim term together, it is reasonably clear that 'surrender value protected investment credits' means the difference between the actual value of a protected investment and the targeted return value of that investment at the time the protected life insurance policy is surrendered." Id.. Thus, we agree that the district court properly construed the term SVPIC to mean the difference between the market value and the book value of the protected investment, or in other words, "[']the difference between the actual value of a protected investment and the targeted return value of that investment at the time the protected life insurance policy is surrendered.'" MetLife III, slip op. at 2 (quoting Hartford, 359 F.3d at 1372).

Bancorp raises a second issue of claim construction. It argues that the district court erroneously imported an "administering" or "managing" limitation into the claims of the '792 patent, and that it did so without expressly considering this aspect of the claim construction. Although the district court did not expressly hold that the asserted patent claims include an "administering" or "managing" limitation, its orders appeared to assume that MetLife only infringed the patent if it used the SVPIC calculation in administering SVP policies. The district court also concluded that infringement could only be shown by establishing that the SVPIC calculation was being made using the Vantage system. "In the absence of evidence showing that the Vantage system sends actual account data to the spreadsheet, the mere existence of the spreadsheet is insufficient to establish that MetLife calculates the difference between book value and market value in the administration of its Stable Value COLI/BOLI accounts." MetLife III, slip op. at 6 (emphasis added).

The district court then considered conflicting declarations as to whether MetLife made the SVPIC calculation in administering the policies, and ultimately accepted Janssen's declaration that the SVPIC calculation was not used in the course of SVP policy administration. The terms "administering" or "managing" do not appear in the language in the body of the claims of the patent, but only in the preamble of the claims and not at all in claim 18. Bancorp contends that because these terms are contained only in the claim preambles, they are not properly construed as claim limitations. MetLife, on the other hand, contends that the "managing" and "administering" language is properly construed as a claim limitation. The district court did not explicitly construe the claims in this respect. We decline to address this issue of claim construction for the

first time on appeal. Instead, we remand to the district court to determine in the first instance whether the claims should be construed to require that the steps be performed for the purpose of policy management or administration.

II

Even if we were to assume, however, that MetLife's interpretation of the claims is correct and that the '792 patent is properly construed to include a managing or administering limitation, the district court's entry of summary judgment must be set aside for two reasons. First, we conclude that Bancorp's motion for discovery pursuant to Fed. R. Civ. P. 56(f) should have been granted.[2] We apply the law of the regional circuit and review the district court's determination as to the Rule 56(f) motion for abuse of discretion. See Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 606 (8th Cir. 1998) (en banc).

Under the Federal Rules of Civil Procedure, the parties must be afforded adequate time for general discovery before being required to respond to a motion for summary judgment. Iverson v. Johnson Gas Appliance Co., 172 F.3d 524, 530 (8th Cir. 1999) ("[S]ummary judgment is proper 'only after the nonmovant has had adequate time for discovery.'" (quoting In re TMJ Litig.ation, 113 F.3d 1484, 1490 (8th Cir. 1997)));

---

[2] Rule 56(f) provides:

If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) deny the motion;
(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
(3) issue any other just order.

Fed. R. Civ. P. 56(f).

see also <u>Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fidelity Life Ins. Co.</u>, 958 F.2d 836, 837-39 (8th Cir. 1992) ("Summary judgment is inappropriate until Providers has had an adequate opportunity to conduct discovery.").[3]

Here, Bancorp was never afforded a reasonable opportunity to conduct any discovery in the infringement action. Bancorp's infringement action was filed while the stay of MetLife's action was in place, and the parties appear to have assumed that the stay applied to proceedings in the infringement action as well as the declaratory judgment action. MetLife's motion for summary judgment was filed approximately two months after the stay was lifted. No discovery schedule had been established in the infringement action, and no significant discovery in that action, if any, had occurred when the summary judgment motion was filed. The two month period between the lifting of the stay and the filing of MetLife's summary judgment motion did not provide

---

[3] While we look to Eighth Circuit law, this is the prevailing rule in all circuits. <u>See, e.g.</u>, <u>Info. Handling Servs., Inc. v. Defense Automated Printing Servs.</u>, 338 F.3d 1024, 1036 (D.C. Cir. 2003) ("[T]o the extent there is any doubt about the genuineness of those disputes, it cannot be resolved until IHS is given adequate time for discovery." (internal quotation marks omitted)); <u>Burnside-Ott Aviation Training Ctr., Inc. v. United States</u>, 985 F.2d 1574, 1582 (Fed. Cir. 1993) ("[S]ummary judgment should 'be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition.'" (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 n.5 (1986))); <u>Wichita Falls Office Assocs. v. Banc One Corp.</u>, 978 F.2d 915, 920 (5th Cir. 1992) ("[W]hen a party is seeking discovery that is germane to the pending summary judgment motion it is inequitable to pull out the rug from under them by denying such discovery."); <u>Cowan v. J.C. Penney Co., Inc.</u>, 790 F.2d 1529, 1532-33 (11th Cir. 1986) ("[G]enerally, summary judgment is premature when the moving party has not answered the opponent's interrogatories[,] . . . especially . . . where [the] . . . interrogatories . . . request information that is critical to the issues in dispute."); <u>Glen Eden Hosp., Inc. v. Blue Cross and Blue Shield of Mich., Inc.</u>, 740 F.2d 423, 428 (6th Cir. 1984) (holding denial of rule 56(f) motion improper where party moving for summary judgment had not been "extremely forthcoming" with respect to document requests and interlocutory appeal had interrupted discovery); <u>see also</u> 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2741, at 413-16 &

Bancorp with an adequate opportunity for discovery, as MetLife acknowledged at oral argument. The district court provided no explanation for why it did not allow any period for discovery as to Bancorp's infringement action, but instead denied the Rule 56(f) motion on the basis that Bancorp had not proven that MetLife's witnesses would testify contrary to their declarations. When, as here, there has been no adequate initial opportunity for discovery, a strict showing of necessity and diligence that is otherwise required for a Rule 56(f) request for additional discovery, see Exigent Tech. Inc. v. Atrana Solutions, Inc., 442 F.3d 1301, 1311 (Fed. Cir. 2006), does not apply. See Iverson, 172 F.3d at 530-31; Costello, 958 F.2d at 837-39.

The district court's refusal to allow depositions cannot be defended on the ground that the Janssen and Lang declarations were credible, as the district court appeared to do. For example, in Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 196 (4th Cir. 2006), the court held, in the context of an inappropriate use of deadly force action under 42 U.S.C. § 1983, that the plaintiff's Rule 56(f) motion--seeking to discover any police department video that might reveal whether the deceased had pointed a weapon at the officers--should have been granted. Id. The district court had denied the discovery, finding "that the 'record appears to be complete as to the perceptions of the officers,'" based on the officers' accounts of the incident. Id. at 194. The Fourth Circuit explained that discovery should have been allowed as to the video evidence because it "represented [the plaintiff's] principal opportunity to contradict the assertion that the district court found dispositive," that is, the officers' statements of their own perception as to the conduct of the deceased. Id. at 196. Likewise, here, the district court should

n.2 (3d ed. 1998) ("[T]he granting of summary judgment will be held to be error when

not have treated the declarations of Janssen and Lang as truthful. Instead, the district court should have allowed Bancorp a reasonable opportunity for discovery concerning the accused components of the Vantage system.

On appeal, MetLife seeks to sustain the district court's order on another ground. It asserts that Bancorp could have conducted discovery about the accused aspects of the Vantage system in MetLife's declaratory judgment action before the stay was imposed. MetLife does not cite any authority for the proposition that the availability of discovery in a declaratory judgment action precludes the availability of discovery in a subsequent action for infringement, but, in any event, we cannot see how the requested discovery could have occurred before the stay, since counsel for MetLife has admitted that the accused aspects of the Vantage system were not even developed until sometime after February 2002, two years after MetLife's declaratory judgment action was filed. There has been no showing that Bancorp was even aware of the accused aspects of the Vantage system before the close of discovery in MetLife's declaratory judgment action in July of 2002. Under these circumstances, there has been no showing that the MetLife action provided the necessary opportunity for discovery.

We remand this case to the district court to allow reasonable discovery by Bancorp to proceed. We think the proper scope of the discovery is best left to the district court to determine in the first instance.

We also conclude that the district court erred in determining that Bancorp had failed to raise a dispute of material fact with respect to infringement, even on the present record. The affidavit of Bancorp's expert, Klausner, stated that MetLife made

discovery is not yet completed . . . .").

SVPIC calculations on spreadsheets used to administer SVP policies. Klausner expressed his opinion that "[t]he Vantage code examined together with the MetLife documents show that Vantage exports data for spreadsheet administration of SVP BOLI and that MetLife's BOLI SVP spreadsheet administration includes the calculation of the difference between book and market value." J.A. at 326. This opinion was based on his analysis of the Vantage source code, various MetLife documents, and particular spreadsheets that Klausner concluded make the SVPIC calculation. MetLife ultimately agreed that such calculations were made in the spreadsheets and that some spreadsheets were used to administer such policies, but its witnesses denied that the spreadsheets containing the SVPIC calculation were used in administering the SVP policies. There was thus a direct conflict in the declarations as to a material fact under MetLife's interpretation of the claims—i.e., whether the spreadsheet calculations were used to administer the policies. The district court dismissed this conflict by crediting the MetLife declarations. Resolving such credibility disputes, however, is not appropriate on summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."); see also, e.g., Pritchett v. Cottrell, Inc., 512 F.3d 1057, 1063 (8th Cir. 2008) ("In considering a motion for summary judgment, we do not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." (quoting Thomas v. Corwin, 483 F.3d 516, 526

(8th Cir. 2007))).  The conflict in declarations created a genuine issue of material fact that made summary judgment inappropriate.[4]

## CONCLUSION

We agree with the district court's construction of the term SVPIC; however, we conclude that the district court erred both in denying Bancorp's motion pursuant to Fed. R. Civ. P. 56(f) and in entering summary judgment of noninfringement in favor of MetLife.  Accordingly, the judgment of the district court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

## VACATED AND REMANDED

## COSTS

No costs.

---

[4]    We see no merit to Bancorp's assertion that the district court erred in failing to exclude some or all of MetLife's summary judgment evidence as a sanction pursuant to Fed. R. Civ. P. 37.  No such request was ever made to the district court.

In light of our disposition, we need not address Bancorp's argument based on the doctrine of equivalents.