**EISAI CO., LTD., et al., Plaintiff,**

v.

**TEVA PHARMACEUTICALS USA, INC., et al., Defendant.**

**Civil Action No. 05–5727 (HAA).**

United States District Court,
D. New Jersey.

Dec. 3, 2007.

**ORDER**

ESTHER SALAS, United States Magistrate Judge.

On August 29, 2007, this Court addressed several discovery disputes raised by Plaintiffs Eisai Co., Ltd. and Eisai Inc. ("Eisai" or "Plaintiffs") and Defendants Teva Pharmaceuticals USA, Inc. and Teva Pharmaceuticals Industries, Ltd. ("Teva" or "Defendants") in an informal joint submission consisting of requests by both parties to compel interrogatory answers and the production of certain documents. The parties, pursuant to this Court's direction, met and conferred on that day and came to an agreement regarding the majority of the disputes. As to those remaining areas of conflict, the Court rendered opinion from the bench. An October 10, 2007 Order (Docket Entry # 91) sets forth the final language of the disputed interrogatories and document requests, taking into account agreements made by the parties and rulings promulgated by this Court. Currently pending before the Court, however, are four remaining discovery disputes, upon which the Court had reserved ruling during the August 29, 2007 conference. Having considered the parties' supplemental briefs, the Court now sets forth its opinion on each of those issues.

## I. Interrogatory No. 13

Eisai's Interrogatory No. 13 states as follows: "Identify each person who provided scientific opinions or factual information in support of any of the technical statements made in the Notice Letter, including their respective opinions or information so provided." During the meet and confer process on August 29, 2007, the parties narrowed the dispute over Interrogatory No. 13 to the question of whether this Court should compel Teva to identify the name(s) of the expert(s) who provided information contained within its Notice Letter.[1] On September 5, 2007, each party submitted supplemental briefing on the issue.

Bruce M. Wexler, Joseph M. O'Malley, Paul, Hastings, Janofsky & Walker LLP, New York, NY, William J. Heller, Nicole A. Corona, McCarter & English, LLP, Newark, NJ, for Plaintiff.

Michael E. Patunas, Allyn Zissel Lite, Lite, Depalma, Greenberg & Rivas, LLC, Newark, NJ, for Defendant.

---

1. Teva's September 5, 2007 supplemental brief also addresses the protections afforded to the opinions and/or work-product of the expert(s) in question. That issue is not before the Court. The only question is whether the expert's identity is discoverable.

Federal Rule of Civil Procedure 26(b)(4)(B) limits the discovery of "facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial" to "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Teva states that it does not plan on calling the expert in question to testify at trial. Given that stipulation, the analysis boils down to three questions: 1) whether or not an expert was "retained or specially employed"; 2) if so, whether the retention was made "in anticipation of litigation"; and 3) whether discovery of the *identity* of the expert's name in this case is subject to an "exceptional circumstances" standard and if so, whether that standard has been met here.

■ A party cannot discover the name of an expert who is informally consulted but never actually retained. Fed.R.Civ.P. 26 advisory committee's notes to 1970 amendments, *reprinted at* 48 F.R.D. 487, 504. In this case, however, Teva makes no claim that the expert at issue was only informally consulted; rather, Teva acknowledges that the expert's opinion was used to draft its Notice Letter. Thus, the "informally consulted" exception to Rule 26(b)(4)(B) does not apply.

■ Having found, therefore, that the expert at issue was "retained or specially employed," the Court moves to a determination of whether this retention was in anticipation of litigation. The filing of a Paragraph IV Certification and accompanying Notice Letter commences a 45–day period within which the patent-holder must file a suit for infringement. 21 U.S.C. § 355(j)(5)(B)(iii). Thus, when Teva sent its Notice Letter, it must have anticipated that Eisai would file suit before the statutory deadline. Given the cause-and-effect between a Paragraph IV Certification and a subsequent suit for infringement, this Court finds that the retention of an expert with an eye towards filing such a Certification is done in anticipation of litigation.

The Court now arrives at the crux of the issue, namely the question of the showing necessary for Eisai to gain access to the identity of Teva's expert. The Tenth Circuit, the only circuit court to address the question, has held that a showing of "exceptional circumstances" is necessary. *Ager v. Stormont*, 622 F.2d 496, 503 (10th Cir.1980). Other courts, including those in the Third Circuit, have applied the language of Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including ... the identity and location of persons having knowledge of any discoverable matter") to compel disclosure of a nontestifying expert's name upon a simple showing of relevance. *Baki v. B.F. Diamond Const. Co.*, 71 F.R.D. 179, 181–82 (D.Md. 1976); *Arco Pipeline v. Trade Star*, 81 F.R.D. 416, 417 (E.D.Pa.1978); *Butler v. Harrah's Marina Hotel Casino*, No. 86–4471, 1987 WL 16691 at **2–3, U.S. Dist. LEXIS 8256 at **6–7 (E.D.Pa. Sept. 8, 1987).

This Court agrees with the analysis set forth by the *Baki* court and upheld by district courts in this Circuit over the ensuing years. Thus, disclosure of the expert's identity in this case is not subject to a heightened showing of "exceptional circumstances." [2] Given that the opinion of the expert is already contained within the Notice Letter itself, Eisai is entitled to know the name of the individual who provided it. Pursuant to Rule 26(b)(1), that individual would possess relevant information regarding "any discoverable matter."

Moreover, the Court is not swayed by the policy considerations outlined by Teva, as applied to the facts of this case. Disclosing the name of the expert who provided information contained within the Notice Letter does not risk the future candidness of that expert's opinions nor does it appear to provide any sort of a "chilling effect" on the future use of experts. It is, quite simply, a request that falls within the parameters of Rule 26(b)(1) and thus it is one to which Teva must respond.

**2.** Having found that a showing of exceptional circumstances is not necessary, the Court takes no position on whether Eisai has indeed met that heightened standard.

Given its relevance, this Court orders Teva to answer Interrogatory No. 13 by disclosing the identity or identities of the expert(s) who provided information contained with the Notice Letter.

## II. Document Request No. 75

Eisai's Document Request No. 75 states as follows "All documents and things concerning any consideration given by Teva to the actual or potential marketing of any therapy for senile dementia of the Alzheimer's type, including but not limited to any donepezil or donepezil hyrdochloride product." In response to this request, Teva has already agreed to provide documents concerning: 1) its consideration given to the marketing of non-donepezil Alzheimer's treatments prior to 1988; 2) its failed attempts to develop an Alzheimer's treatment at or before 1988. Teva objects, however, to producing any documents post-dating 1988, given that donepezil's date of invention was June 22, 1987. On September 5, 2007, the parties submitted supplemental briefing on this issue. Because Eisai based its motion to compel on the secondary considerations of unexpected results and failure of others, the Court addresses this Interrogatory with respect to each of those arguments.

■ First, the secondary consideration of "unexpected results" allows a patent-holder to rebut a *prima facie* case of obviousness by showing that the "claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected." *In re Soni*, 54 F.3d 746, 750 (Fed.Cir.1995). The practical thought behind the doctrine is that an unexpected result coming to light after issuance of the patent is suggestive of the fact that the patent could not have been obvious at the time of issuance. *Id.* The date of invention for Donepezil was June 22, 1987, and the patent issued on January 23, 1990. Thus, post–1990 evidence of Donepezil's unexpected results would be relevant to the question of obviousness. *Knoll Pharmaceutical Co. v. Teva Pharmaceuticals USA*, 367 F.3d 1381 (Fed.Cir.2004), cited by Eisai, supports this basic notion—that evidence developed after the patent grant is not categorically excluded from consideration, especially with regard to unexpected results.

*Knoll,* however, does not support the more broad-ranging argument advanced by Eisai in this case, in which Teva's alleged inability to develop other Alzheimer's drugs somehow becomes indicative of donepezil's unexpected results. As Teva rightly notes, unexpected results applies to the claimed invention itself, meaning donepezil or donepezil hydrochloride. The doctrine does not encompass the spin that Eisai puts on it, and this Court is not inclined to stretch it that far. Thus, with regard to the secondary consideration of unexpected results, the request is granted in part. Teva shall produce only those documents through 2004 that relate to donepezil or donepezil hydrochloride products.

Next, the secondary consideration of failure of others recognizes the fact that the routine failure of others to solve a problem can weigh in favor of non-obviousness. *Alco Standard Corp. v. Tennessee Valley Authority*, 808 F.2d 1490, 1500–01 (Fed.Cir.1986). Practically speaking, the failure of competitors to develop the drug in question over the span of several years is an objective indication that the drug in question is non-obvious. In this case, however, Eisai asks for all documents related to Teva's actual or potential marketing of all Alzheimer's drugs through 2004. Eisai claims that the post-invention failure of others is as strong an indication of obviousness as its pre-invention counterpart. Teva objects on timing grounds, noting that only pre-invention failure of others is relevant to the analysis.

The cases relied upon by Eisai simply do not support its position that failure of others post-dating the patent's issuance date is relevant. Eisai again cites *Knoll Pharmaceutical Co. v. Teva Pharmaceuticals USA*, 367 F.3d 1381 (Fed.Cir.2004), this time for the idea that because the *Knoll* court did not expressly limit the evidence of failure of others to a pre-invention time period, it was implicitly admissible. This Court cannot find precedent by silence; the fact that *Knoll* does not indicate a limiting time period is not evidence in favor of the assertion that evidence of failure of others has no time limit. Next, both parties cite *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559 (Fed.Cir.1992) to

support their arguments. *Minnesota Mining* cites as evidence of non-obviousness extensive prior evidence of the failure of other competing companies to develop a fiberglass substitute for plaster-based casting systems. *Id.* at 1574. All of these attempts occurred prior to the issuance of the Minnesota Mining's relevant patents and therefore support the notion of pre-invention failure of others. Eisai does cite to one small mention of a competing product that was developed post-invention. *Id.* That competing product was developed pursuant to an earlier-issued patent and the Court's recognition of the product does not stand for the proposition that failure of others encompasses post-invention documents. This Court therefore finds that failure of others is inherently limited to events pre-dating issuance of the patent.

 In sum, given the analysis regarding both unexpected results and failure of others, this Court orders Teva to produce all documents concerning the actual or potential marketing of donepezil and donepezil hydrochloride products through 2004. Additionally, Teva shall produce all documents concerning the marketing of any Alzheimer's disease drugs, not limited solely to those involving donepezil, through January 23, 1990, the date of issuance of the '841 patent.

### III. Document Request No. 130

Eisai's Document Request No. 130 states as follows "All documents and things concerning Teva's capabilities or intentions to manufacture and market donepezil or donepezil hydrochloride." The parties do not appear to disagree on the appropriateness of this Request; they rather disagree on its timing. Mr. Lynch has offered to have a conversation in early January with Mr. Wexler regarding Teva's intentions, including "whether Teva intends to proceed to go on the market when it gets approval or not." (Tr. 99). Mr. Wexler wants documents now regarding Teva's intention to market. (Tr. 101).

While the Court understands Eisai's desire to know exactly what Teva is planning to do upon the expiration of the 30–month stay, Mr. Lynch's proposal of early January is eminently reasonable. By January 7, 2008, the two parties shall meet and confer regarding Teva's intention to manufacture and market donepezil and donepezil hydrochloride. If the result of that discussion is the imminent filing of a preliminary injunction application, Mr. Lynch shall, within two weeks of that meeting, turn over all documents responsive to Document Request No. 130.

The Court also warns Teva that it will not tolerate an objection to discovery at that point on that basis that complying with it is unduly burdensome. Because the issue has been raised well in advance of a potential preliminary injunction hearing, this Court is mindful of the fact that Teva cannot now object to the document request, seek to delay compliance with it, and then choose to object at a later date on grounds of undue burden. Thus, while the Court agrees with a January 7, 2008 meet and confer date, both parties are warned as to making any objections at that point on the basis of burden.

Finally, to the extent that this production occurs outside of any discovery end-date, the Court will entertain an amendment to the implicated scheduling order and will at that point construct an adequate scheduling order that properly places the preliminary injunction motion before the Honorable Judge Harold A. Ackerman, United States District Judge.

### IV. Document Request Nos. 9 and 10

 Document Request No. 9 states as follows: "All documents and things concerning the timing, schedule, timetable, or any projection for the timing of FDA approval of Teva's ANDA." Document Request No. 10, similarly, asks for "[a]ll documents and things concerning the likelihood of FDA approval of Teva's ANDA." Defendants, in their May 8, 2006 "Responses and Objections" to Plaintiffs' Document Requests, asserted the generally boilerplate objections that Request Nos. 9 and 10 were irrelevant, overly broad, and inconsistent with the Federal Rules of Civil Procedure 26 and 34.

During the August 29, 2007 oral argument, Mr. Lynch clarified his position, noting that documents concerning a "material change in the status of [the] ANDA" are relevant and will be produced. (Tr. 103–04). Mr. Lynch also stated that documents concerning likelihood (Request No. 10) most likely do not

exist. (Tr. 104). Finally, Mr. Lynch voiced his concern that the "back and forth that usually occurs" between the FDA and the ANDA-filer involve communications that are irrelevant. (*Id.*). Mr. Wexler, concerned about the definition of materiality, requested that Teva turn over all communications with the FDA concerning handling of the ANDA such that Plaintiffs could then determine the materiality of each one. (Tr. 105).

Considering the parties' agreement that, under Requests 9 and 10, documents related to a "material change" in the status of the ANDA are relevant, this Court finds it proper for Teva to turn over all responsive documents to Request No. 9 concerning the "timing" of FDA approval of the ANDA. The Court sees no reason to draw a line between "material change" and other communications discussing the approval timeline but not necessarily implicating the final status of the ANDA. Rather, seeing as this case concerns the '841 patent and seeing as Teva's ANDA filing challenges that very patent, documents concerning the timeline of the ANDA process are relevant under even the most narrow of definitions of relevance.

As to documents concerning the likelihood of approval (Request No. 10), Mr. Lynch's statement that no such documents exist nearly moots this Request. And to the extent that these documents do exist, they are probably subsumed by the "timing and scheduling of approval documents" implicated by Request No. 9. However, if there are other documents or communications from the FDA in which the agency discusses likely approving or denying the ANDA, Teva should produce those as well. Again, documents concerning the ANDA and the approval process are clearly within the broad scope of relevance outlined by the Federal Rules of Civil Procedure and this Court cannot preclude them from discovery.