NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1537

B-K LIGHTING, INC.,

Plaintiff-Appellant,

v.

FRESNO VALVES & CASTINGS, INC.
(doing business as Vision3 Lighting),

Defendant-Appellee.


Steven E. Shapiro, of Santa Monica, California, argued for plaintiff-appellant.

Duane H. Mathiowetz, Howrey LLP, of San Francisco, California, argued for defendant-appellee. With him on the brief were Irene Yang; and Richard L. Stanley, of Houston, Texas.

Appealed from: United States District Court for the Central District of California

Judge Margaret M. Morrow

# United States Court of Appeals for the Federal Circuit

2008-1537

B-K LIGHTING, INC.,

Plaintiff-Appellant,

v.

FRESNO VALVES & CASTINGS, INC.
(doing business as Vision3 Lighting),

Defendant-Appellee.

Appeal from the United States District Court for the Central District of California in case no. 06-CV-02825, Judge Margaret M. Morrow.

_____

DECIDED:  April 28, 2010

_____

Before NEWMAN, SCHALL, and DYK, Circuit Judges.

Opinion for the court filed by PER CURIAM.  Opinion concurring in part and dissenting in part filed by Circuit Judge NEWMAN.

PER CURIAM.

The United States District Court for the Central District of California ruled, on summary judgment, that all of the claims of United States Patent No. RE39,084 ("the '084 patent") are invalid on the ground of obviousness.  B-K Lighting, Inc. ("B-K Lighting"), the patentee, appeals.  We affirm as to claims 5, 7, 8, and 23–31.  As to claims 3, 12, 15, 18, 19, 21, and 22, the judgment is vacated, and we remand for further proceedings.

BACKGROUND

The invention is "an adjustable mount for sealed light fixtures that provides an easy to use mechanism for adjusting and setting the desired lighting angle for light emanating from the light fixture" while maintaining the integrity of the sealed light system. '084 patent col.2 ll.52–55. The lighting mount is described as having a novel structure whereby the lighting angle can be easily moved and set in all directions during installation, allowing the installer to stand back and evaluate the lighting effect without the need for an iterative process of tightening and loosening the installation screws in order to change the lighting angle, or needing another person to hold the fixture in place while the lighting angle is evaluated before the installation is made permanent. The claims that include this feature are claims 3, 12, 15, 18, 19, 21, and 22 of the '084 patent, and this feature is described in those claims as a "first resistance means" that allows "frictional pivoting." Claim 3 is typical. It provides:

An adjustable mount for a light fixture, comprising:

a support member connected to the light fixture, said support member having a first passageway therethrough to allow passage of one or more electrical wires to said light fixture;

a base member having a second passageway therethrough and a base opening at one end of said base member, said base member pivotally connected at an end opposite said base opening to said support member, said second passageway connected to said first passageway in said support member to allow passage of said electrical wires;

first locking means for locking said support member to said base member;

a first seal between said base member and said support member to prevent entry of moisture and contaminants;

a stud member having an upper end, a lower end and a stud opening through said stud member, said upper end of said stud member in said base opening and rotationally interacting therewith, said lower end of said stud member

configured to connect to a source of electrical power, said stud opening connected to said second passageway in said base member to allow passage of said electrical wires from said source of electrical power to said base member;

second locking means for locking said base member to said stud member; and

a first resistance means for limiting free pivotal movement of said base member relative to said support member, wherein said first resistance means comprises a tapered opening in said support member and a tapered post in said base member, said tapered opening sized and configured to receive said tapered post and allow <u>frictional pivoting</u> of said tapered post therein.

'084 patent col.6 ll.32–67 (emphasis altered). B-K Lighting's commercial embodiment of the patented mount has the model number 360HD. The accused infringer, Fresno Valves & Castings, Inc. ("FVC"), is a competitor of B-K Lighting.

After the '084 patent issued, B-K Lighting sued FVC for infringement and for unfair competition in the United States District Court for the Central District of California. FVC responded with defenses and counterclaims relating to, among other things, invalidity on the ground of obviousness. At the <u>Markman</u> hearing, the district court construed thirteen of the terms in the claims. Relevant to this appeal, the court construed the "first resistance means" as "a tapered opening in the support member and a tapered post in the base member, with the tapered opening sized and configured to receive the tapered post and allow <u>frictional pivoting</u> of the tapered post in the tapered opening and equivalents thereof," and the court stated that this structure "limit[s] free pivotal movement of said base member relative to said support member." <u>B-K Lighting, Inc. v. Vision3 Lighting</u>, No. CV 06-02825, 2008 WL 4811176, at *22, *25 (C.D. Cal. Mar. 13, 2008) (emphasis added). The parties agree that "frictional pivoting" is "shorthand" for "limiting free pivotal movement."

Ultimately, the district court granted FVC's motion for summary judgment of invalidity of all claims of the '084 patent on the ground of obviousness. B-K Lighting, Inc. v. Fresno Valves & Castings, Inc., No. 06-CV-02825, slip op. at 45 (C.D. Cal. May 23, 2008) ("Summary Judgment Order"). The court concluded that the claims of the '084 patent would have been obvious in light of the combination of B-K Lighting's prior 360SL model and the Hydrel Corporation's 7100 Series Architectural Lighting System ("the Hydrel 7100"). Id. at 44 & n.135.[1] Focusing in particular on the frictional pivoting limitation found in claims 3, 12, 15, 18, 19, 21, and 22, the court concluded that the Hydrel 7100 disclosed frictional pivoting and dismissed B-K Lighting's contrary expert declaration as conclusory. Id. at 29–34. The parties stipulated to dismissal without prejudice as to the other issues, and B-K Lighting timely appealed the judgment of invalidity. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). We review the district

---

[1] The district court also concluded after reviewing "B-K's cursory arguments regarding secondary considerations" that such evidence was not sufficient to overcome "FVC's strong showing of obviousness." Summary Judgment Order, slip op. at 44. The separate opinion concurring in part and dissenting in part deems this approach erroneous. But, "as we have often held, evidence of secondary considerations does not always overcome a strong prima facie showing of obviousness." Asyst Techs., Inc. v. Emtrak, Inc., 544 F.3d 1310, 1316 (Fed. Cir. 2008); see, e.g., Agrizap, Inc. v. Woodstream Corp., 520 F.3d 1337, 1344 (Fed. Cir. 2008) ("In this case, the objective evidence of nonobviousness simply cannot overcome such a strong prima facie case of obviousness."); Leapfrog Enters., Inc. v. Fisher-Price, Inc., 485 F.3d 1157, 1162 (Fed. Cir. 2007) (finding "no basis to disagree with the district court's conclusion" that "given the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion that claim 25 would have been obvious").

court's grant of summary judgment de novo. <u>AquaTex Indus., Inc. v. Techniche Solutions</u>, 479 F.3d 1320, 1328 (Fed. Cir. 2007).

I

Before the district court, FVC cited several reference structures that, in combination, were argued to render the '084 claims obvious. With regard to claims 3, 12, 15, 18, 19, 21, and 22, the district court relied on the combination of B-K Lighting's model 360SL and the Hydrel 7100. The parties do not challenge the selection of these references as the closest prior art. The 360SL is the foundation on which B-K Lighting built the 360HD, and it lacks certain features of the 360HD, including the tapered opening and tapered post whose design produces frictional pivoting. The Hydrel 7100 is a lighting mount that allows 180º vertical adjustment of the light fixture using a pivoting structure that employs a tapered post and a tapered opening. The question of obviousness was focused on the differences between the combination of these prior art devices and claims 3, 12, 15, 18, 19, 21, and 22 of the '084 patent, and in particular whether the Hydrel 7100 disclosed frictional pivoting. On appeal, B-K Lighting principally asserts that claims 3, 12, 15, 18, 19, 21, and 22 would not have been obvious because the Hydrel device did not disclose frictional pivoting.

On summary judgment, the district court concluded that the Hydrel 7100 disclosed frictional pivoting. Although the court noted that the testimony of FVC's expert, Dr. David Dornfeld ("Dornfeld"), and B-K Lighting's expert, Dr. John D. Pratt ("Pratt"), conflicted regarding whether the Hydrel 7100 disclosed frictional pivoting, and that "at first blush this appears to be a 'battle of the experts,'" <u>id.</u> at 31, the court disregarded Pratt's testimony that the Hydrel 7100 did not disclose frictional pivoting.

Therefore, the court held that the claims of the '084 patent containing the "first resistance means" requiring frictional pivoting would have been obvious in light of the combination of B-K Lighting's own 360SL and the Hydrel 7100.

In the device described in claims 3, 12, 15, 18, 19, 21, and 22 of the '084 patent, a support member, to which the lighting fixture is attached, contains a tapered opening that receives a tapered post from a base member. The tapered post pivots in the tapered opening, and an internal compression fit between the tapered opening and tapered post permits the light fixture to be adjusted and to remain in the adjusted position when released; this is the frictional pivoting of the "first resistance means."

FVC's expert, Dornfeld, stated in his expert declaration that tapers were known mechanical elements with known properties in common industry use for over a century: "A person of ordinary skill in the art would know that tapers have been used in the industry for years and are widely used for holding machine tools, as spindles for axles, or for any other application requiring a self-centering, self-locking shaft." J.A. 1411. Addressing the Hydrel 7100, Dornfeld stated:

> It is my opinion that Hydrel discloses a first resistance means. Hydrel has a self-releasing taper: a tapered opening in one half of the support member is sized and configured to receive a tapered post in the base member, and allows for infinite adjustment under load. <u>The tapered post can frictionally pivot in the tapered opening.</u> The self-releasing taper allows for infinite vertical adjustment through 180 degrees while under heavy load.

J.A. 1399 (emphasis added). Thus, "Hydrel . . . disclose[s] the first resistance means explicitly, and as claimed in the '084 patent." J.A. 1411. Dornfeld stated that it "would require only the use of common sense and creativity to combine the tapered opening and post of . . . Hydrel" with other prior art references to obtain the '084 patent. Id. He

also noted that by using the "well-known taper element," "the result obtained is predictable, as each element functions in the way that it would be expected to." Id.

On the other hand, B-K Lighting's expert, Pratt, stated that "there is no disclosure of frictional pivoting and no tapered opening in the support member as required by the court's claim construction" in the Hydrel 7100. J.A. 2847. He opined that because Hydrel employs a self-releasing taper, it "appears to teach away from frictional pivoting and suggests that the tapered surfaces may instead be involved in a locking function." Id. Thus, according to Pratt, "the first resistance means element is not disclosed in Hydrel, and this element is not an obvious variation from that disclosed in Hydrel." Id. As such, Pratt concluded that "the 360SL in view of Hydrel does not meet the elements of claims 3, 12, and 15." J.A. 2858.

The district court disregarded Pratt's declaration, calling it "conclusory" and "factually unsupported." Summary Judgment Order, slip. op. at 31–32. It is not clear, however, why the court found Pratt's declaration any more conclusory than Dornfeld's. Both experts based their opinions on the same data sheets for the Hydrel 7100. This conflict in expert declarations regarding whether the Hydrel 7100 disclosed frictional pivoting created a genuine issue of material fact that made summary judgment inappropriate. See, e.g., Metro. Life Ins. Co. v. Bancorp Servs., L.L.C., 527 F.3d 1330, 1338–39 (Fed. Cir. 2008); Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1351–52 (Fed. Cir. 2000); Optical Disc Corp. v. Del Mar Avionics, 208 F.3d 1324, 1338–39 (Fed. Cir. 2000); Cont'l Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1269 (Fed. Cir. 1991). Because the conflicting testimony of the parties' experts regarding whether the Hydrel 7100 disclosed frictional pivoting created a genuine issue of material fact, we vacate the

district court's judgment of invalidity for claims 3, 12, 15, 18, 19, 21, and 22 of the '084 patent.

II

As for the claims that do not include the "first resistance means" that provides the frictional pivoting, B-K Lighting argues that other limitations, appearing in one or more of claims 5, 7, 8, and 23–31, distinguish the prior art. We have considered B-K Lighting's arguments on these limitations, and conclude that absent inclusion in the claims of the means that requires frictional pivoting, the district court's ruling has not been shown to be incorrect. Accordingly, the judgment of invalidity as to these claims is affirmed.

The case is affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion.

AFFIRMED IN PART, VACATED IN PART, and REMANDED

COSTS

No costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1537

B-K LIGHTING, INC.,

Plaintiff-Appellant,

v.

FRESNO VALVES & CASTINGS, INC.
(doing business as Vision3 Lighting),

Defendant-Appellee.

Appeal from the United States District Court for the Central District of California in Case no. 06-CV-02825, Judge Margaret M. Morrow.

NEWMAN, <u>Circuit Judge</u>, concurring in part, dissenting in part.

On cross-motions for summary judgment, the district court granted the motion of Fresno Valves & Castings ("FVC"), and ruled that United States Patent RE 39,084, owned by B-K Lighting, is invalid on the ground of obviousness. The panel majority now holds, solely for the reason that there were opposing expert opinions, that the question of obviousness could not be resolved on summary judgment. This is an unnecessary departure from the procedure that this court and the Supreme Court have accepted and endorsed, in the interest of efficient resolution of patent disputes:

I

In <u>KSR Int'l Co. v. Teleflex Inc.</u>, 550 U.S. 398, 427 (2007), the Court stated that while a "court can and should take into account expert testimony, which may resolve or keep open certain questions of fact," summary judgment should not be withheld whenever parties present contradictory expert opinions, thereby manufacturing a "conflict," however attenuated. My colleagues on this panel hold that since there were opposing expert opinions, without more, the question of obviousness requires trial. If this procedure is to be the rule in patent cases let us be clear, to avoid the expensive redundancy that is today achieved, whereby the parties and the district court pursued the procedures of summary judgment through depositions, briefs, written opinion, final judgment, and appeal. It is not a trivial matter to require the parties, the trial judge, and perhaps ultimately this court, to repeat in the trial context much of what they have already done.

The record of the summary judgment proceeding contained extensive documentary and testimonial evidence, undisputed except for the expert witnesses' opinion concerning a prior art device. The district court adopted the position of the FVC expert and held all of the '084 claims invalid on the ground of obviousness. I agree that the district court erred, for the court adopted the view of the FVC expert that the prior art device "can" provide frictional pivoting, rejecting the view of the B-K expert that the prior device does not provide frictional pivoting based on the undisputed differences in the placement of the pivot in the prior art device and the patented device. The question arising from the expert testimony is readily reviewed on appeal, for the issue is not of

credibility, but of substance. See KSR, 550 U.S. at 427 (deciding the question of obviousness on appeal).

II

I agree that those claims of the '084 patent that do not include the limitation to "frictional pivoting" are invalid, for the claim breadth does not distinguish their scope from the prior art. However, this court's absence of discussion of the references in connection wit the proposed remand produces the same error for which we criticize the district court; that is, a conclusory ruling devoid of explanation.

As to the claims that include the limitation of frictional pivoting, the legal question of obviousness is now subject to trial and redetermination by the district court. In connection with the remand, I comment on two errors of application of the law of obviousness, lest legal error be tacitly perpetuated:

A

First, the district court erred in its understanding of the law governing the role of the "objective indicia" or "secondary considerations" in the analysis of obviousness. B-K Lighting had pointed to the commercial success and FVC's copying of the device of the '084 patent, as evidence to be considered. However, the district court ruled that, as a matter of law, the factors of copying, commercial success, and unexpected results are not to be considered at all, when there is a "strong prima facie case of obviousness" based on prior art alone. B-K Lighting, Inc. v. Fresno Valves & Castings, Inc., No. 06-CV-02825, slip op. at 44 (C.D. Cal. May 23, 2008) ("Summary Judgment Order"). Thus the district court declined to consider B-K Lighting's evidence of these factors. My

colleagues on this panel support this holding, although it is contrary to the Supreme Court's and the Federal Circuit's long-standing precedent.

The Court in KSR confirmed the Court's earlier holding in Graham v. John Deere Co., 383 U.S. 1 (1966) that "commercial success, long felt but unsolved needs, failure of others, etc.," are an integral part of the obviousness analysis, and serve as a check against "the use of hindsight," 550 U.S. at 421 (quoting Graham, 383 U.S. at 36). The correct focus is not whether such evidence can be invoked to rebut a prima facie case based on prior art; the focus is whether a prima facie case is established at all when such evidence is considered. See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 958 (Fed. Cir. 1986) ("Under Graham, a district court makes proper fact findings on those four inquiries and then assesses the ultimate legal question of nonobviousness."); Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1380 (Fed. Cir. 1986) ("Objective evidence such as commercial success, failure of others, long-felt need, and unexpected results must be considered before a conclusion on obviousness is reached and is not merely 'icing on the cake,' as the district court stated at trial." (emphasis in original)); Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1573 (Fed. Cir. 1992) (same).

The district court's ruling that the evidence of commercial success and unexpected results would not be considered at all, in view of the court's conclusion that there was a "strong prima facie case" based on prior art, is contrary to precedent embodied in dozens of holdings, for the reasons explained in Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530 (Fed. Cir. 1983):

> Evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention

appearing to have been obvious in light of the prior art was not. It is to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art.

Id. at 1538-39 (internal citations omitted). See also Knoll Pharm. Co., Inc. v. Teva Pharms. USA, Inc., 367 F.3d 1381, 1385 (Fed. Cir. 2004) ("The so-called 'objective' criteria must always be considered and given whatever weight is warranted by the evidence presented."); Vandenberg v. Dairy Equip. Co., 740 F.2d 1560, 1567 (Fed. Cir. 1984) ("In determining the question of obviousness, inquiry should always be made into whatever objective evidence of nonobviousness there may be."); Kansas Jack, Inc. v. Kuhn, 719 F.2d 1144, 1150 (Fed. Cir. 1983) ("[A]ll evidence touching the obvious-nonobvious issue must be fully considered before a conclusion is reached on that issue"). The objective evidence must be considered in determining whether a prima facie case of obviousness had been made.

Numerous decisions have reinforced this rule, as the court "has repeatedly explained, [such evidence] is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of nonobviousness." Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc., 520 F.3d 1358, 1365 (Fed. Cir. 2008). In Ortho-McNeil the court reiterated that secondary considerations often provide some of the best "independent evidence of obviousness." Id.; see also Ruiz v. AB Chance Co., 234 F.3d 654, 667 (Fed. Cir. 2000) ("Our precedents clearly hold that secondary considerations, when present, must be considered in determining obviousness."). As described in Simmons Fastener Corp. v. Ill. Tool Works, Inc., 739 F.2d 1573, 1575 (Fed. Cir. 1984):

> The section 103 test of nonobviousness set forth in Graham is a four part inquiry comprising not only the three familiar elements (scope and content

of the prior art, differences between the prior art and the claims at issue, and level of ordinary skill in the pertinent art), but also evidence of secondary considerations when such evidence is, of course, present. Only after all evidence of nonobviousness has been considered can a conclusion on obviousness be reached. The trial court's error lies in its exclusion of such evidence in arriving at a conclusion on the obviousness of the claimed invention.

(citation omitted). See also Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co., 730 F.2d 1452, 1461 (Fed. Cir. 1984) ("All evidence must be considered before a conclusion on obviousness is reached."). In Ashland Oil, Inc. v. Delta Resins & Refractories, Inc., 776 F.2d 281, 306 (Fed. Cir. 1985), the court stated that:

Just as it is legal error for a district court to fail to consider relevant evidence going to secondary considerations, it may be legal error for a district court to presuppose that all evidence relating to secondary considerations, when considered with the other Graham indicia relating to the obviousness/nonobviousness issue, cannot be of sufficient probative value to elevate the subject matter of the claimed invention to the level of patentable invention.

(citations omitted). The matter was settled long ago. Let us not invite legal error by relying on the recent sprinkling or aberrant statements.

It is a bedrock principle of appellate review that earlier panel decisions prevail unless overturned by the court sitting en banc. Newell Cos. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed. Cir. 1988). Such precedence to established law is demanded by the integrity of judicial process. Sacco v. Dep't of Justice, 317 F.3d 1384, 1386 (Fed. Cir. 2003). It appears that the district court was led into error, for the court cited recent contrary rulings of panels of this court, as are now cited in the Per Curiam opinion. These rulings are contrary to the precedent that binds us. The criteria by which obviousness is determined is not a matter of the draw of the panel; it is a matter of substantive patent law, and requires national uniformity.

B

Another aspect of the district court's analysis suggests possible misdirection. The district court criticized, that "B-K proffers no evidence that, viewed as a whole, the device protected by the '084 patent produced unexpected results. It contends only that the taper interaction was unexpected." The district court held that B-K Lighting must show not that "a single element of the invention" produced an unexpected result, but that "viewed as a whole, the device . . . produced unexpected results." B-K Lighting, Summary Judgment Order at 43-44 & n.134.

Patentability of a new mechanical device indeed requires consideration of the invention as a whole as compared with the prior art. However, advantageous or unexpected properties are often due to a particular component of the device; it does not negate patentability of the device when the unexpected results are due to a particular component.

III

In sum, I believe the matter is ripe for decision on this appeal. But, since the case is being remanded for trial, I encourage the district court to avoid the errors of law into which it had been led the first time around.